U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed August 10, 2005

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| JIMMY SCOTT HARMON AND | § | CASE NO. 03-51117-RLJ-7 |
| DIANE HARMON, | § | |
| | § | |
| Debtors | § | |

| | | |
|---|---|---|
| JIMMY SCOTT HARMON AND | § | |
| DIANE HARMON, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-5009 |
| | § | |
| EDUCATIONAL CREDIT MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION**

The Court considers whether to grant Jimmy Scott Harmon a "partial discharge" of his

debt arising from student loans held by Educational Credit Management Corporation ("ECMC").

Jimmy Scott and Diane Harmon (collectively the "Harmons") filed this suit seeking a determination of the dischargeability of student loans under section 523(a)(8) of the Bankruptcy Code. Trial was held on December 16, 2004. Upon consideration of the evidence, the Court requested that the parties, by January 20, 2005, submit a legible Exhibit "E", the Federal Consolidation Loan Application and Promissory Note dated February 21, 2003. The Court issued its Memorandum Opinion dated February 9, 2005. The Court found that the balance of the student loans, as of June 13, 2004, was $144,897.98. The Court held that the Harmons failed to satisfy all three prongs of the so-called *Brunner* test. *See Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). Specifically, the Court found that "[w]hile the Harmons will likely never have the ability to repay the loans in full, their situation will allow them to make *some* payments on the loans." The Court held, therefore, that the Harmons failed to satisfy the second prong of the three-prong *Brunner* test. The Court then addressed the propriety of granting a partial discharge. The District Court for the Northern District of Texas in *In re Nary* has held that is appropriate for the bankruptcy court to consider a partial discharge under certain circumstances. This Court directed that further hearing would be held on the issue of whether a partial discharge was appropriate and, if so, the terms of a partial discharge.

The Court refers to its prior Memorandum Opinion, a copy of which is attached hereto, for a statement of the facts and the Court's conclusions of law in this case.

At the continued hearing on the issue of partial discharge, the Court heard additional evidence. The evidence then reflected that, given the accrual of interest ($25.69 per day), the balance of the student loans as of April 26, 2005, was $151,963.17. *See* Ex. D-D. The evidence further reflects that the various loans, as consolidated, call for monthly payments of $854.91 per

month, accruing interest at 6.5% per annum. *See* Ex. D-W and D-X. This is based on a payout term of 359 months. *Id.*[1] Exhibits D-W and D-X, each entitled "Disclosure of Repayment Schedule," state that four repayment options were offered by Nelnet (the presumed predecessor to ECMC). The four options are: (1) the Standard Plan under which the borrower makes the same monthly payment throughout the term of the loan; (2) the Graduated Plan, which provides for low initial payments that increase significantly over time; (3) the Income Sensitive Plan, which provides for payments, limited to five years, that are based on the borrower's gross monthly income and renewable each year; (4) the Extended Repayment Plan, which provides for payments over a period not to exceed twenty-five years. *Id*.

ECMC argues that a partial discharge is improper unless the Court first finds that full repayment of the loan would cause an undue hardship. The Court does not disagree. However, the Court admits of some confusion given its conclusion that the Harmons failed to meet the second prong of the *Brunner* test. As noted in its prior Memorandum Opinion, the Fifth Circuit has adopted the three-prong *Brunner* test in evaluating undue hardship under section 523(a)(8). *In re Gerhardt*, 348 F.3d 89 (5th Cir. 2003). To reiterate, the *Brunner* test requires a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

---

[1] The payment schedule is based on two consolidated loans, one with a loan amount of $99,618.03, the other with a loan amount of $35,064.79. The loan amounts were amounts owing as of April 25, 2003. Exs. D-W and D-X.

*Brunner*, 831 F.2d at 396. As the *Brunner* test is conjunctive, a failure to satisfy one prong would mean the debtor fails to establish that repayment of the loan is an undue burden under section 523 (a)(8). The Court determined that because the Harmons could make partial payments in the future, they failed the second prong (persisting state of affairs) and thus, it would follow, fail to satisfy the *Brunner* test. The confusion lies in defining whether the *Brunner* test mandates a showing that the debtor cannot pay *any* of the debt. Accordingly, unless the debtor can establish that such "additional circumstances" will prevent him from ever making any payments of the loan, he will not meet the *Brunner* test. However, what is the result of the debtor establishing that such circumstances prevent him from paying back the entirety of the loan, or, stated otherwise, allows him to repay only a portion of the loan? Such is the result in this case. The Court notes that an argument can be made under *Brunner* that a debtor need only establish that he cannot repay the *entirety* of the loan in order to satisfy the second prong of the *Brunner* test. This argument relies on the Code's definition of "debt" and "claim." The student loan is the "debt" for purposes of section 523 (a)(8). "Debt" is defined as a liability on a claim. 11 U.S.C. § 101. "Claim" means a right to payment. A student with "debt" has been construed to encompass the entire liability, not merely some portion of a debt or selected term of repayment. *In re Taylor*, 223 B.R. 747 (9th Cir. BAP 1998). Under the *Brunner* test, therefore, it could be argued that the debtor need only show that: (1) he cannot maintain a minimal standard of living if forced to repay the entirety of the student loan; (2) additional circumstances exist that this "state of affairs," i.e. the inability to repay the entirety of the loan, is likely to persist; and (3) he has made a good faith effort to repay the loan. It would not matter that the debtor could repay some of the loan. This Court attempts to construe the undue burden standard

in a manner that is consistent both with the Fifth Circuit mandate in *In re Gerhardt* and the holding of the District Court in *In re Nary*. *In re Nary* held that a bankruptcy court is authorized "to grant a partial discharge where the undue hardship requirement of section 523(a)(8) is met as to part but not all of a student loan." *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752, 767 (N.D. Tex. 2000). Were the Court to adopt an "all or nothing" standard, ECMC would conceivably receive nothing on its claim. *See id*. at 767-68.

The Court concludes that, in applying the *Brunner* standard, the Harmons can pay a portion but not all of their student loans, and thus the Court must consider a partial discharge. Stating that the Harmons failed to meet the second prong is too broad. They meet the standard as to part of the loan but not all of the loan, which is precisely what the Court held in its Memorandum Opinion.

The Court now turns to fashioning a partial discharge. As noted in the Court's prior Memorandum Opinion, the Court assumes much discretion in prescribing the terms of a partial discharge. *See* Memorandum Opinion, ¶ 38-39. The District Court in *Nary* held that a partial discharge must be grounded in the original contract between the parties. 253 B.R. at 766. Here Mr. Harmon had six loans that were consolidated into two loans. The evidence indicates that Mr. Harmon never actually agreed to the repayment plan on the consolidation loans, however. Harmon checked the box for "extended payments." After Harmon signed the note, his designation was marked out and replaced with the "standard payment" option. Despite this, as noted, the present consolidation loan contemplates a monthly payment of $854.91 based on the

5

359 month repayment period (29 years 11 months) at 6.5% interest.[2] The Court considers these terms as representing the parties' present contract in determining the terms of a new repayment, i.e. non-discharged, amount. The consolidation of the loans took place on February 21, 2003.

The Court concludes that while the Harmons will be able to make some payments on the loan, they will not reach that point for another two years. Given normal raises and a possible second job for Mr. Harmon, the Harmons should be able to pay $275 to $350 a month against the loan. The Court uses $312.50 to determine the ratio of that portion of the loan to be repaid and the portion to be discharged. The formula yields a total amount to be repaid of $55,547.94.[3] The balance of the consolidated loan, which is $96,415.23, is discharged. ECMC shall amortize the repayment sum as a new principal amount beginning May 1, 2007, with interest at 6.5% and based on a 359 month amortization schedule with level monthly payments. No interest shall accrue on the loan prior to May 1, 2007.[4] The terms of the consolidated loan as presently exist between Mr. Harmon and ECMC shall continue to apply, unless inconsistent with this Memorandum Opinion and the Court's order issued in accordance herewith.

### End of Memorandum Opinion ###

---

[2] To simplify matters, the Court treats the two consolidated loans as one loan. They each accrue interest at 6.5%, with interest beginning April 25, 2003.

[3] The calculation is as follows: 312.50/854.91 (151,963.17)=$55,547.94.

[4] The Court's calculations reflect monthly payments of $351.42 per month. The Court recognizes that because the loan is amortized based upon a present balance (as of April 26, 2005) that exceeds the loan amount (as of April 25, 2003 – see notes 1 and 2 *supra*) upon which the installments were based under the consolidated loan, the new installment payments slightly exceed (by $1.42 a month) the amount the Court considers the debtors able to pay. The difference is insignificant. It should also be apparent, moreover, that given level monthly payments, the Harmons' ability to make the payments may indeed become easier over time.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| JIMMY SCOTT HARMON AND DIANE HARMON, | § § § | CASE NO. 03-51117-RLJ-7 |
| Debtors | § § | |
| JIMMY SCOTT HARMON AND DIANE HARMON, | § § § | |
| Plaintiffs | § § | |
| VS. | § § | ADVERSARY NO. 04-5009 |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | § § § | |
| Defendant | § § | |

## MEMORANDUM OPINION

### Preliminary Statement

Jimmy Scott and Diane Harmon (collectively "Harmons") initiated this adversary proceeding against Nelnet Loan Services ("Nelnet") seeking a determination of the dischargeability of student loans held by Nelnet, but now in the possession of Educational Credit Management Corporation ("ECMC"). On May 25, 2004, ECMC filed a motion to intervene to substitute as defendant in this case as assignee and successor in interest to Nelnet, which was granted by the Court on June 22, 2004. The Harmons ask this Court to declare Mr. Harmon's student loans fully dischargeable, or in the alternative, seek a partial discharge of the indebtedness. ECMC argues

that the discharge should be denied in full and that partial discharge is inappropriate in this case. Trial was held on December 16, 2004. Upon consideration of the evidence, the Court requested that the parties, by January 20, 2005, substitute a legible Exhibit "E", the Federal Consolidation Loan Application and Promissory Note dated February 21, 2003. Upon consideration of the pleadings, the evidence presented, and the arguments made at trial, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The Harmons filed this Chapter 7 case on September 22, 2003.

2. Mr. Harmon is 52 years old.

3. Prior to entering college in the mid-1980's, Mr. Harmon worked as a welder or general machinist. After leaving this line of work, Mr. Harmon sought a higher education, and received his bachelors in education from Texas Tech University in 1988. Mr. Harmon received a masters in education from Texas Tech in 1991. He then received a second master's degree in counseling in 1996 from Texas A&M – Commerce. Mr. Harmon briefly pursued a Ph.D. in 1996, but failed to complete his studies.

4. Mr. Harmon took out student loans to pay for the entirety of his studies and neither he nor his wife dispute the validity or amount of the student loans, listed in their schedules at $134,053. The actual balance as of June 13, 2004 was $144,897.98. Def.'s Ex. D.

5. The Harmons have not made any payments toward the student loan indebtedness. Indeed, until filing bankruptcy in 2003, Mr. Harmon sought, and received, deferments, which delayed payment of this obligation.

6. Mr. Harmon's loans entered the repayment phase in November of 1996. On June 30 of that year, however, his wife sustained serious back injuries in an accident. As a result of the accident, Mrs. Harmon is disabled, which prevents her from working. Due to her injury, Mrs. Harmon incurred, and continues to incur to a lesser extent, substantial medical bills. To mitigate her pain, Mrs. Harmon required a 360-degree back fusion operation and has, at various times since the accident, received numerous epidural procedures. Subsequent to her injury, the Harmons' medical costs soared, eventually reaching as much as $155,000.

7. Prior to her accident, Mrs. Harmon worked as a cafeteria line server in Greenville, Texas, earning just over minimum wage. She has not worked since her accident in June of 1996.

8. Mrs. Harmon currently takes a multitude of medicines to treat various pains and conditions, including depression.

9. Mr. Harmon is the primary caretaker of Mrs. Harmon.

10. The Harmons filed suit as a result of Mrs. Harmon's injury, eventually reaching a settlement with the defendant in the amount of $125,000. Def.'s Ex. U. After costs and attorneys' fees, the Harmons received $53,648.14. *Id.*

11. Mr. Harmon attended college with the intent of becoming a school counselor and one day a school administrator. To that end, Mr. Harmon began his career with Lubbock Independent School District as a counselor at Estacado High School, where he is currently employed. Def.'s Ex. N. Further, throughout his tenure, Mr. Harmon has routinely applied for administrative positions at various schools in Lubbock, as well as surrounding towns. He has not been offered any such positions and maintains his career as a counselor.

12. Mr. Harmon has acted with reasonable diligence in seeking employment and attempting to maximize his income.

13. Mr. Harmon's income increased from $47,710 in the 2002-2003 school year, to $50,674 for the current school year. *See* Def.'s Ex. N, P. The Harmons' total monthly income is $2,929.85. There is some dispute between the parties regarding the Harmons' expenses. Schedule J from their schedules reflects total monthly expenses of $3,111. Mr. Harmon, by his testimony at trial, reduced a few expenses, but also added the expense of $325 a month for a 2000 Ford pickup which was purchased during the pendency of this bankruptcy case. The total modified monthly expenses, therefore, are $3278. The Harmons' expenses are reasonable for their circumstance and leave little room for unforseen expenses. ECMC's counsel questioned Mr. Harmon regarding the Harmons' expenses but ECMC generally has no quarrel with the propriety or necessity of the Harmons' expenses. The Court notes that of their expenses, the Ford Taurus car note, in the amount of $275 per month, has approximately fifteen more payments.

14. The Court finds that the Harmons' monthly expenses are reasonably necessary to maintain a minimal standard of living so that their needs, namely food, shelter, clothing, and medical treatment, are met.

15. Though Mrs. Harmon's employment ability will not increase in the next few years, Mr. Harmon's salary will increase over the years.

16. The Harmons' 2003 Joint Tax Return reflects adjusted gross income of $43,844. Def.'s Ex. T.

17. If appropriate, these findings of fact shall be considered conclusions of law.

## Conclusions of Law

### A. Jurisdiction

18. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 523(a)(8). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### B. Standard for Dischargeability of Student Loans

19. The Harmons argue that, pursuant to 11 U.S.C. § 523(a)(8), excepting Mr. Harmon's student loan debt from discharge would impose an undue hardship on the Harmons, and that his student loans should therefore be fully discharged. *See* Pl.'s Compl. at ¶ 8.

20. At trial, the Harmons argued alternatively that the Court should grant, at a minimum, a partial discharge of Mr. Harmon's student loan debt.

21. ECMC contends that the student loan debt should be declared nondischargeable. At trial, ECMC argued that the Harmons have not exhibited good faith in their efforts to repay the loans. ECMC further argued that Mr. Harmon's salary has substantially increased in recent years, thereby enabling the Harmons to make payments on the student loans.

22. An "[educational] loan made, insured, or guaranteed by a governmental unit" is nondischargeable unless excepting such loan from discharge would impose "undue hardship" on the debtor. 11 U.S.C. § 523(a)(8).

23. Mr. Harmon's student loans constitute loans within the meaning of section 523(a)(8). Section 523(a)(8), therefore, guides the inquiry of whether Harmon's student loans are dischargeable. Accordingly, the legal standard which the Harmons must meet to have his student loans declared dischargeable is the "undue hardship" test. *See id.*

24. Because the Bankruptcy Code fails to define "undue hardship," the Fifth Circuit expressly adopted the oft-cited *Brunner* test from the Second Circuit Court of Appeals to aid in this analysis. *See In the Matter of Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). To justify a discharge of student loans under section 523(a)(8), the *Brunner* test requires a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).

25. The first prong of the *Brunner* test requires the court to determine what constitutes a "minimal standard of living." *Id.* While a definition has yet to be definitively provided, "[c]ourts universally require more than temporary financial adversity and typically stop short of utter hopelessness." *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752, 761 (N.D. Tex. 2000) (quoting *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir. 1998). "Mere financial adversity is insufficient, for that is the basis for all petitions in bankruptcy. On the other hand, the Bankruptcy Code does not require that the debtor live in poverty before a student loan may be discharged." *Yapuncich v. Montana Guaranteed Student Loan Program (In re Yapuncich)*, 266 B.R. 882, 888 (Bankr. D. Mont. 2001) (internal citations omitted).

26. The Harmons' monthly take-home pay is $2,929.85. Although some dispute exists between the parties, it is largely uncontested that the Harmons' monthly expenses exceed their monthly income. The Harmons' expenses are $3,278 per month. They allocate no expenses for

recreational items; Mr. Harmon, through his testimony, said they spend approximately $300 a month for food rather than $450, which was itemized on Schedule J. He also reduced their clothing allowance from $100 a month to $50 a month.

27. Regardless of their monthly student loan payments, the Harmons are already on the wrong side of their income to expense ledger. The Court therefore concludes that the Harmons satisfy the first prong of the *Brunner* test.

28. The second prong of the *Brunner* test requires that the court determine whether additional circumstances exist indicating that Harmons' state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *See Brunner*, 831 F.2d at 396. These circumstances "encompass 'circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor applied for the loans or [have] since been exacerbated.'" *Gerhardt*, 348 F.3d at 92 (quoting *In re Roach*, 288 B.R. 437, 445 (Bankr. E.D. La. 2003).

29. The facts must strongly suggest that the Harmons will be unable to repay over any extended period of time. *See In re Nary*, 253 B.R. at 765. This prong is intended "to be 'a demanding requirement.'" *Gerhardt*, 348 F.3d at 92 (quoting *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001). The debtor must prove "a total incapacity ... in the near future to pay [his] debts for reasons not within [his] control." *Gerhardt*, 348 F.3d at 92 (quoting *In re Faish*, 72 F.3d 298, 307 (3d Cir. 1995).

30. The "state of affairs" referred to in the second prong of the test is the debtor's inability to maintain a "minimal" standard of living if forced to repay the loans. The relevant time period is the repayment period of the student loans.

31. The evidence is deficient on certain issues relative to the second prong. First, there is no evidence of the precise repayment terms. The parties stated in closing that the payments are approximately $854 a month. There is no evidence of the length of such payments, however. Exhibit "E" introduced into evidence is the Federal Consolidation Loan Application and Promissory Note, dated February 21, 2003. Under "Repayment Options," both the "Standard Option" and the "Income-Sensitive Payments" option are checked. The document does not define these options. The Court is satisfied that the Harmons will be unable to repay $854 a month for the foreseeable future. But, as noted, this is an exacting standard and the issue becomes whether the Harmons can repay the loans under any possible scenario. In this regard, counsel for ECMC advised the Court that an available option for the Harmons is the so-called Income Contingent Payment Plan, which, as explained by counsel, the debtors' payments are based on their annual income and their ability to make payments on the loans over the next twenty-five years. The amount left unpaid at the end of twenty-five years is forgiven. While the Harmons will likely never have the ability to repay the loans in full, their situation will allow them to make *some* payments on the loans. *See Hollins v. U.S. Dep't of Educ.*, 286 B.R. 310 (Bankr. N.D. Tex. 2002) (emphasis added).

32. Despite the difficulty in predicting the Harmons' future financial situation, the Court concludes that the Harmons fail to meet the second prong of the *Brunner* test. Mr. Harmon's

salary increased an average of 3% over the past three years. The Ford Taurus will be paid off in a little more than a year, thereby reducing their monthly expenses by $275 a month. Assuming Mr. Harmon's annual raises will continue, the Harmons' financial problems will likely continue at least through the 2006-2007 school year. At that point, Mr. Harmon should make approximately $53,800 per year. Assuming no significant increase in expenses, their income will exceed their expenses. Mr. Harmon is 52 years old and in relatively good health. Their financial situation should gradually improve over the years. Further, Mr. Harmon receives an average of five to six weeks vacation time each summer. He testified he typically rests during this period – taking care of overdue chores and catching up on sleep. Although the Court is sympathetic to these needs, this time affords an opportunity to earn extra income. Thus, the evidence suggests that the Harmons' financial situation, while certainly problematic at this time, is not likely to continue indefinitely.

33. The Court now turns to the third and final prong of the *Brunner* test: good faith. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *In re Nary*, 253 R.R. at 768 (internal quotations omitted). "Factors to be considered include the number of payments the debtor made, attempts to negotiate with the lender, proportions of loans to total debt, and possible abuse of the bankruptcy system." *In re Hollins*, 286 B.R. 310, 317 (Bankr. N.D. Tex. 2002) (quoting *In re Barron*, 264 B.R. 833, 842 (Bankr. E.D. Tex. 2001)). A lack of payment, however, does not necessitate a finding of bad faith. *See Nary*, 253 B.R. at 768.

34. Mr. Harmon has made no payments on the loans. He has, however, had discussions with the servicer regarding the various options for repayment. He sought a deferral after his wife's injury. He later suggested they draft a portion of his paycheck each month. There is no evidence that he has avoided ECMC or its predecessor. He has made efforts to obtain promotions and thus better pay. The main issue raised regarding bad faith is the Harmons' failure to pay against the student loans with the settlement proceeds they received for Mrs. Harmon's injuries. They received $53,648.14 from a total settlement of $125,000. Mrs. Harmon testified the $53,648.14 was used to help them buy a home, to payoff a car note, to pay medical bills, and to fly to Florida for an emergency. They specifically used $20,000 to pay down on a house they purchased. On balance, the Court is disinclined to find bad faith given the manner in which the Harmons chose to spend settlement proceeds received to compensate Mrs. Harmon for her injuries. The Harmons meet the good faith test.

**Partial Discharge**

35. The question, then, is whether denial of discharge of the student loans is required. The problem is that the Harmons are unable to pay their obligation at least for the near future. The Court therefore considers the propriety of a partial discharge. In this regard, the Court is guided by the District Court in *In re Nary*, which, in adopting an approach taken by the Sixth Circuit in *Hornsby, supra*, held that the bankruptcy court may grant a partial discharge of student loans

where the undue hardship is met as to part, but not all. *Id.* at 767[1]; *see also Yapuncich*, 266 B.R. 882, 893-94 (Bankr. D. Mont. 2001); *Garybush v. U.S. Dep't of Educ.* (*In re Garybush*), 265 B.R. 587, 592 (Bankr. S.D. Ohio 2001); *Logan v. N.C. State Educ. Assistance Auth.* (*In re Logan*), 263 B.R. 796, 799 (Bankr. W.D. Ky. 2000). With a partial discharge, the court discharges a portion of the student loans so as to leave an amount which can be paid without undue hardship. *See Logan*, 263 B.R. 799; *Bakkum v. Great Lakes Higher Educ. Corp.* (*In re Bakkum*), 139 B.R. 680, 684 (Bankr. N.D. Ohio 1992).

36. Given the holding of *Nary*, the court is compelled to consider whether a partial discharge is appropriate. In effect, after performing the *Brunner* analysis, the court determines if it is an undue hardship for the debtor to pay part, but not all of the loan.

37. A resolution of this follow-up issue may alter the conclusion reached upon a strict application of the *Brunner* test. Indeed, strict application of the *Brunner* test is noted and criticized by the Tenth Circuit in *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1308 (10th Cir. 2004) (courts applying the *Brunner* test deny discharge under even the most dire circumstances). Thus, "an overly restrictive interpretation of the Brunner test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor." *Id.*; *see Nary*, 253 B.R. at 760.

---

[1] In *Hornsby*, the Sixth Circuit concluded that section 105(a) of the Bankruptcy Code empowers the bankruptcy court to consider a partial discharge and to thereby "fashion a remedy allowing the [debtors] ultimately to satisfy their obligations to [the creditor] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." *Hornsby*, 144 F.3d at 440. As noted by the District Court in Nary, other courts have adopted a different view by taking an "all or nothing" approach. *Nary*, 253 B.R. at 766, citing *In re Taylor*, 223 B.R. 747 (B.A.P. 9th Cir. 1998).

38. In fashioning a partial discharge, the court is free to alter the terms of repayment of the student loans by, for example, discharging a part of the principal, eliminating interest, and postponing payments. *See Hornsby*, 144 F.3d at 439-40; *Yapuncich*, 266 B.R. at 894-95; *Garybush*, 265 B.R. at 592. While the court may so alter the terms of repayment, the partial discharge that the court fashions must be grounded in the original contract between the parties. *See Nary*, 253 B.R. at 766.

39. In this case, there is no evidence of the precise repayment terms – i.e. amount, length, interest rate. Moreover, the granting of a partial discharge lies within the equitable power of the court. This Court has viewed a partial discharge a necessary consideration in light of *Nary*. *See Mills v. Panhandle Plains Higher Education Authority and Texas Guaranteed Student Loan Corporation.* (Bankr. N.D. Tex. 2002) (unpublished). Chief Judge Felsenthal in *Hollins v. United States Department of Education*, 286 B.R. 310 (Bank. N.D. Tex. 2002) denied discharge of the debtor's student loans and thus elected not to grant a partial discharge. *Id.* at 316. Judge Felsenthal, citing *Nary*, did recognize that the bankruptcy court *may* consider the granting of a partial discharge. Given that the granting of a partial discharge may be viewed as a matter within the broad discretion of the court, this Court is of the opinion that the evidence should be reopened and further argument made on the issue. The Court will, therefore, set a hearing at which the sole issue to be considered is whether, given the circumstances and equities of the case, a partial discharge is appropriate, and, if so, the terms of a partial discharge.

40. If appropriate, these conclusions of law shall be considered findings of fact.

SIGNED February 9, 2005.

_____
ROBERT L. JONES
UNITED STATES BANKRUPTCY JUDGE

- 13 -